IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CR3002 |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| ROOSEVELT ERVING, JR., | ) | |
| | ) | |
| Defendant. | ) | |

The defendant, Roosevelt Erving, Jr., has filed a pro se motion and amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Filings 52 and 55. Liberally construing the allegations of his motions, (Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), the defendant claims he is entitled to relief because his counsel provided ineffective assistance in:

1. Failing to properly inform the defendant of the potential consequences of entering a guilty plea; specifically, failing to advise the defendant that if the court accepted his guilty plea and the parties' plea agreement, the defendant would be sentenced to forty years in prison which, according to the defendant, exceeded the statutory maximum prison term for the charges he faced, (filing 52, p. 2; 55, p. 4);

2. Failing to move to suppress the defendant's confession for violation of his Fifth and/or Sixth Amendment rights, (filing 55, p. 6); and

3. Failing to file an appeal of defendant's conviction and sentence as instructed by the defendant, (filing 55, p. 5).

The defendant's motion will be denied with respect to the first two claims, but an evidentiary hearing will be ordered with respect to the third claim.

## I. BACKGROUND

On January 20, 2005, a seventeen-count indictment was filed against Roosevelt Erving, Jr. alleging he committed eight separate robberies of FDIC-insured banks from July 6, 2000 through January 14, 2005. See Filing 3 (Indictment), counts 1, 3, 5, 7, 9, 11, 13, & 15. The defendant was further charged with brandishing a firearm during the commission of each of these bank robberies, (see filing 3 (Indictment), counts 2, 4, 6, 8, 10, 12, 14, & 16), and being a felon in possession of firearms, (see filing 3 (Indictment), count 17). A superseding indictment filed on February 24, 2005 charged the defendant with committing five additional bank robberies between November 4, 2000 and March 20, 2002, (see filing 10 (Superseding Indictment), counts 3, 5, 7, 11, & 15), and brandishing a firearm during the commission of these crimes, (see filing 10 (Superseding Indictment), counts 4, 6, 8, 12, & 16). Accordingly, as of February 27, 2005, the defendant was facing a twenty-seven count indictment for committing thirteen bank robberies, each with a firearm, and being a felon in possession of firearms.

On September 23, 2005, the defendant signed and filed a Petition to Enter a Plea of Guilty and Rule 11(c)(1)(C) plea agreement. See filing 31 (Petition to Enter a Plea of Guilty) & filing 32 (Plea Agreement). The defendant's plea petition requested leave to enter a guilty plea on each bank robbery count of the superseding indictment, (filing 10 (Superseding Indictment), counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, & 25), and one count of brandishing a firearm during the commission a bank robbery; specifically, the January 14, 2005 robbery of the Wells Fargo Bank at 66th and O streets in Lincoln, Nebraska, (filing 10 (Superseding Indictment), count 26). Under the terms of the plea agreement, the defendant and government agreed that in exchange for the defendant's guilty plea, and subject to the court's acceptance of defendant's plea and the parties' plea agreement, all remaining counts of the superseding indictment would be dismissed by the government, and the defendant would transfer title of three vehicles to the government, serve a forty-year prison

sentence followed by five years of supervised release, and pay restitution. Filing 32 (Plea Agreement), p. 2, ¶ 4.

In response to question 13(a) of defendant's plea petition, the defendant wrote the following description of the maximum term of imprisonment and fine for the offenses subject to the plea:

> A. BANK ROBBERY COUNTS: UP TO 25 YEARS PRISON; $250,000 FINE; UP TO 3 YEARS SUPERVISED RELEASE; $100 SPECIAL ASSESSMENT
>
> B. GUN COUNT: 7 YEARS TO LIFE IMPRISONMENT; $250,000 FINE; 5 YEARS SUPERVISED RELEASE; $100 SPECIAL ASSESSMENT (<u>CONSECUTIVE</u> TO BANK ROBBERY PRISON TIME.)

Filing 31 (Petition to Enter a Plea of Guilty), p. 6, ¶ 13(a)(emphasis in original). The defendant's description of his potential sentence was consistent with the explanation of his potential sentence as set forth in his plea agreement. Filing 32 (Plea Agreement). Specifically, the plea agreement explained:

> l(a). You, the defendant herein, will plead guilty to all counts in the superseding indictment charging bank robbery or attempted bank robbery (counts 1, 3, 5,7,9, 11, 13, 15, 17, 19,21,23, and 25), in violation of Title 18, United States Code, Sections 21 13(a) and 2 1 13(d). You understand that by entering these pleas of guilty, you are exposed to imprisonment of up to 25 years, a fine of up to $250,000, both such imprisonment and fine, up to 3 years of supervised release, and a $100 special assessment <u>per count</u>. . . .
>
> l(b). You also agree to plead guilty to one of the counts in the superseding indictment which charges brandishing a firearm during commission of a crime of violence, (either count 2,4,6, 8, 10, 12, 14, 16, 18,20,22,24, or 26) in violation of Title 18, Untied States Code, Section

> 924(c). You understand that by entering this plea of guilty you are exposed to imprisonment of not less than 7 years and up to life imprisonment, that the sentence of imprisonment for this count must be served consecutive to the sentence of imprisonment imposed for the offenses described in paragraph l(a) above, a fine of up to $250,000, both such imprisonment and fine, up to 5 years of supervised release, and a $100 special assessment.

Filing 32 (Plea Agreement), p. 1 (emphasis added).

The hearing on defendant's petition to enter a guilty plea was held before me on September 23, 2005. CourtFLOW Player audio recording, RGK050923-114053, Roosevelt Erving Jr., 4:05CR3002, at 14:19:33 to 15:23:00. The defendant attended this hearing.

At the outset of defendant's plea hearing, the government advised the defendant of the charges he faced and his potential sentence of up to twenty-five years of imprisonment for each of the thirteen bank robbery charges, (counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, and 25), and an additional seven years of imprisonment on the gun charge (count 26). The defendant acknowledged that he understood the potential sentence, and with that understanding, wished to plead guilty. Id. at 14:50:00-15:54:45.

In response to the court's questioning, the defendant stated he understood the charges against him, and further understood that he had a right to plead not guilty and that, by pleading guilty, he was waiving several constitutional rights, including his right to a trial by jury. Id. at 14:56:40-14:58:15. The defendant confirmed that he could read and write and had completed the Petition to Enter a Plea of Guilty with the assistance of his lawyer. Id. at 14:55:45-14:56:08. According to the defendant, his counsel, John Vanderslice, went over all the questions in the petition with the defendant, and the defendant understood the questions. Id. at 15:16:29-38. The defendant's plea petition acknowledges he was afforded adequate time to speak with

4

his counsel, had been told everything about his case, and was satisfied with his counsel's representation.  See filing 31 (Petition to Enter a Plea of Guilty), p. 2, ¶ 5.

At the plea hearing, the defendant was advised and/or reminded that despite the parties' plea agreement, the court remains obligated to independently assess the facts and impose an appropriate sentence, and is not required to follow either the sentencing guidelines or the parties' plea agreement.  The court advised the defendant that at sentencing, the court must consider defendant's conduct related to the bank robbery charges, including the brandishing of a firearm during every bank robbery or attempted robbery, even if the defendant did not plead guilty to all such conduct.  Id. at 14:59:10-40.  The defendant was also reminded that if the court accepted the parties' plea agreement, the court would impose a prison sentence totaling forty years.  Id.  15:04:20–15:08:10.

In response to the court's questioning, the defendant stated his lawyer thoroughly explained the plea agreement and that he understood it.  Id. at 15:09:23–10:30.  The terms of the plea agreement were explained tby the government at the hearing, and the defendant acknowledged he understood that if the plea agreement was accepted, in exchange for his plea of guilty on the thirteen bank robbery counts and one gun count, the remaining counts of the indictment would be dismissed and he would be sentenced to forty years in prison.  Id. at 15:10:28–15:11:49.

The defendant explained that he entered into the plea agreement and signed the plea petition "because it's the best thing for me to do," (filing 31 (Petition to Enter a Plea of Guilty), p. 12, ¶ 35(c)), and not because of any promises other than those reflected in the plea agreement.  CourtFLOW Player audio recording, RGK050923-114053, Roosevelt Erving Jr., 4:05CR3002, at 15:12:45-15:14:55.  Upon further examination, the defendant stated he had talked with his lawyer "about what he could face if he didn't enter into the deal."  He admitted that one of the reasons he was

5

pleading guilty was "obviously to get the benefit of the deal," and that he and his lawyer had "long discussions about the forty-year sentence versus what he might be facing if he [went] through jury trial and [was] convicted on all of the counts." Id. at 15:15:43– 15:16:08.  Although the defendant stated he understood he could be sentenced to forty years in prison, the court nonetheless inquired:

> Court: Now this is very important because thirty years from now. . . you aren't going to have a chance to change your mind.  So if you have questions you want to ask me, now's the time to ask them.  Do you have any questions you want to ask me?
>
> Defendant: No.

Id. at 15:16:08-27.

The defendant admitted he was guilty of committing the thirteen bank robberies charged, and that he displayed a firearm, pointed it at others, and used it to direct their actions during the robberies and attempted robberies.  Id. at 15:16:27-42; 15:20:20-57.  The defendant's plea petition provided the following written description of the acts he committed:

> ON THE DATES & PLACES LISTED IN THE SUPERCEDING INDICTMENT, I ROBBED OR TRIED TO ROB THE FDIC BANKS LISTED (13 BANKS). REGARDING COUNT 26, I "BRANDISHED" A HANDGUN WHEN I TRIED TO ROB THE WELLS FARGO BANK ON 66TH & O, LINCOLN NE.

Filing 31 (Petition to Enter a Plea of Guilty), p. 14, ¶ 45.  Upon followup by the court, the defendant affirmed that he committed the acts as described in his plea petition.  CourtFLOW Player audio recording, RGK050923-114053, Roosevelt Erving Jr., 4:05CR3002, at 15:16:42-15:17:40.

Based on the defendant's responses, the court found the defendant guilty of counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25 and 26 of the superseding indictment (filing 10), and further found that defendant's guilty plea was knowing, intelligent and voluntary.  Id. at 15:21:36-15:22:00.

The defendant's sentencing hearing was held on December 15, 2005.  Filing 37.  The defendant attended this hearing.  The court explained the sentence proposed under the parties' plea agreement.

> I understand that the sentence I am required to impose in this case is essentially forty years if I adopt the plea agreement.  That would be comprised of a sentence of three hundred ninety-six months on the bank robbery counts to be followed by a consecutive term of eighty-four months on the gun charge.

CourtFLOW Player audio recording, RGK051215-081426, Roosevelt Erving Jr., 4:05CR3002, at 12:20:10-37.  The court then asked the government to recite a summary of the terms of the plea agreement and explain its reasons for entering into that agreement with the defendant.

The government responded:

> The essential provisions of the plea agreement call for Mr. Erving to plead guilty to all of the robberies and attempted robberies that are charged in the superseding indictment and also to plead guilty to one count of . . . brandishing a firearm during the commission of a bank robbery, and he has chosen count 26 as the count, the "gun count" if you will, that he wanted to plead guilty to.  In addition, he agreed to surrender his ownership interest in three automobiles that are more specifically identified in the plea agreement . . . Mr. Erving has signed over his interest in those titles and they have been delivered to the custody of the FBI, the titles have. . . .  The government agreed that so long as Mr. Erving continues to demonstrate acceptance of

7

>responsibility, that he has and did timely notify us of his intent to plead guilty so that we did not expend any time and effort preparing for a trial, and so he would be entitled to the full three levels for acceptance of responsibility. The government further agreed that if the plea and the plea agreement are accepted, that the government would dismiss the remaining counts of the superseding indictment, which essentially are the remaining gun counts, which turn out to be the even-numbered counts between 2 and 24 inclusive. . . and finally the plea agreement was tendered, at least a portion of the plea agreement was tendered, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and that the parties agreed under the circumstances of this case that the appropriate sentence of imprisonment would be a forty-year term of imprisonment which would include the imprisonment for the bank robberies and attempted bank robberies as well as the imprisonment for the gun count to which he plead.

Id. at 21:04-35. The government explained that it entered into the plea agreement because it, and all agencies involved in the investigation of defendant's criminal conduct, believed forty years of imprisonment was a substantial and reasonable sentence, and a fair compromise under the circumstances, especially considering the hazards of litigation, and the possibility of multiple trials. Id. at 21:35-48

Counsel for the defendant confirmed that the government's summary of the plea agreement was accurate. Mr. Vanderslice explained that the primary reason the defendant entered into the plea agreement was the fact that Mr. Erving was apprehended outside the bank at 66th and O Streets in Lincoln, Nebraska, (see filing 10 (Superseding Indictment), count 25), and shortly thereafter, he gave a statement to law enforcement that implicated him in the twelve other robberies charged in the superseding indictment. Mr. Vanderslice described the 66th & O robbery as "cut and dried," with no realistic defenses available. Id. at 25:14-22. As to the remaining counts of the indictment, he stated:

> The primary defense that I saw that Mr. Erving could raise was a motion to suppress his statements, and Mr. Erving and I talked about Miranda issues, voluntariness issues, things of that nature, and I was of the opinion legally that even though we could raise that issue and litigate it, that . . .the possibility of success . . . was very small.  And if the case was actually litigated, . . . the cases on all the counts were actually litigated, I felt that there was a strong probability that Mr. Erving would in essence be looking at, for him, a life sentence because of what we talked about in chambers ,and what Mr Erving and I discussed, and what Mr. Everett and I discussed, about how the statutory law works on additional guns.  The first gun, as you know judge, . . . carries a seven-year consecutive sentence, then every additional gun upon conviction carries a twenty-five year consecutive sentence, so if you add up the number of consecutive twenty-five year sentences, Mr. Erving was looking at well over a life sentence, probably three hundred plus years.

Id. at 12:26:20-27:43.  For the defendant's benefit and information, the court clarified that the gun sentences as described by Mr. Vanderslice were mandatory under the applicable statutes.   Id. at 12:27:45-28:07.

Mr. Vanderslice went on to explain that he approached the government early in the case to determine whether a plea agreement could be reached which would give Mr. Erving some possibility of not spending the rest of his life in prison.  The government's initial offer required a forty-year prison sentence.  Mr. Vanderslice explained that despite his attempts to negotiate a lower prison sentence, which included comparing the defendant's conduct to other bank robbery sentences imposed, the government was unwilling to enter into a plea agreement calling for less than a forty-year prison sentence.  Mr. Vanderslice explained that ultimately, after discussing the entire situation with Mr. Erving, Mr. Erving decided to take the deal, primarily because it offered him a  chance of being released from prison by the age of 64.  Id. at 12:28:10-30:15.

9

The defendant agreed with the attorneys' summary of the plea agreement and his counsel's explanation of defendant's reasons for asking the court to adopt the plea agreement. The defendant stated he wanted the court to accept the plea agreement. Id. at 12:32:50-12:33:05. I accepted the parties' plea agreement. Id. at 12:33:10-14.

The defendant was sentenced to a total of forty years in prison; thirty-three years (three hundred ninety-six months) on counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, and 25 of the superseding indictment, and seven years (eighty-four months) on count 26 of the superseding indictment, said terms to run consecutively. The defendant was further sentenced to five years of supervised release, and to pay restitution in the amount of $443,912.34. Filing 45 (Amended Judgment). Upon the government's oral motion, the remaining gun counts, (filing 10 (Superseding Indictment), counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, & 24), were dismissed. Id. at 12:39:46-40:10.

## II. STANDARD OF REVIEW

A motion to vacate, set aside, or correct a sentence may be based upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

> Relief under 28 U.SC. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). An evidentiary hearing need not be held if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. See also Kingsberry v. United States, 202 F.3d 1030, 1033 (8th Cir. 2001)(affirming denial of § 2255 motion without an evidentiary hearing where defendant claimed his counsel provided erroneous plea advice).

### III. ANALYSIS

The defendant claims his sentence must be vacated because Mr. Vanderslice failed to properly advise him concerning his potential prison sentence if he pleaded guilty, failed to move to suppress the defendant's statements to officers following his arrest, and failed to file an appeal at defendant's request. A claim of ineffective assistance of counsel is reviewed under the two-pronged standard of Strickland v. Washington, 466 U.S. 668, 694 (1984). The defendant must demonstrate that counsel's performance was deficient, and that such deficient performance prejudiced his defense. Id. at 687; Bryson v. United States, 268 F.3d 560 (8th Cir. 2001); Williamson v. Jones, 936 F.2d 1000, 1004 (8th Cir. 1991). The first prong requires showing that defendant's attorney failed to provide reasonably effective assistance. Strickland, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The second prong requires the defendant to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Hubbeling v. United States, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)(quoting Cheek v. United States, 858 F.2d 1330, 1336 (8th Cir. 1988)).

1. <u>Inadequate or Incorrect Advice Concerning the Consequences of Pleading Guilty.</u>

The defendant claims his forty-year prison sentence exceeds that permitted under 18 U.S.C. 2113(a) and (d). Filing 52, p. 2. According to the defendant, the statutory maximum sentence on the bank robbery counts was twenty-five years, and even after adding a seven-year consecutive sentence on the gun count, his sentence should not have exceeded thirty-two years. The defendant states the information he received from his counsel regarding the potential prison sentence was incorrect, and his uninformed guilty plea must therefore be set aside. He claims:

> [The] Sixth Amendment Requires Counsel to Inform the Defendant of the Consequences of Entering a Plea of Guilty. To Give a Defendant the Opportunity to Make a Conscious Decision. Was Counsel Ineffective Where Counsel Failed to Properly Inform Defendant of the Consequences of the Plea of Which Defendant Entered Resulting in Improper Sentence.

Filing 55, p. 4.

The defendant's argument lacks merit. The defendant pleaded guilty to thirteen counts of bank robbery, each of which is a separate and distinct crime for the purposes of sentencing. <u>U.S. v. Moore</u>, 877 F.2d 651 (8th Cir. 1989)(holding that three robberies of the same FDIC-insured savings and loan association committed weeks apart were separate and distinct crimes for sentencing purposes). Since the defendant pointed a gun at others during the commission of all of these crimes, the statutory maximum prison term for each of the bank robberies was twenty-five years. 18 U.S.C.A. § 2113(d). The defendant's forty-year prison sentence, thirty-three years of which relate to the thirteen bank robberies, does not violate 18 U.S.C.A. § 2113(d).

12

The defendant claims that due to inadequate and ineffective counsel representation, he did not know he could be sentenced to forty years in prison when he pleaded guilty. He apparently claims that had he known that the sentence could be that long, he would not have entered a guilty plea. However, the record establishes the defendant was informed, both in writing and by counsel, that should his guilty plea and the plea agreement be accepted, he would be sentenced to forty years in prison. The defendant understood he was pleading guilty to all the bank robbery counts and one gun count in exchange for a sentence of only forty years rather than, effectively, life in prison. Knowing this, the defendant chose to plead guilty to "obtain the benefit of the deal." CourtFLOW Player audio recording, RGK050923-114053, Roosevelt Erving Jr., 4:05CR3002, at 15:15:43– 15:16:08.

Moreover, even assuming Mr. Vanderslice did not inform the defendant concerning the potential prison sentence, the defendant cannot make a showing of prejudice arising from this alleged deficient representation. During the course of the plea hearing, counsel for the government explained the terms of the plea agreement, including the proposed forty-year prison sentence, and the court further confirmed that the defendant understood the consequences of his guilty plea, including the forty-year sentence outlined in the plea agreement. The defendant understood the terms of the plea agreement, and knowing this information, wanted to court to accept his plea of guilty. The defendant cannot validly claim that had his counsel informed him of the prison term he faced, he would not have pleaded guilty. Whether from his counsel, the language of the plea agreement, the government's summary recitation of the agreement, or the court's statements to the defendant at the plea hearing, the defendant was fully aware that he was facing forty years in prison when he tendered his guilty plea and before that plea was accepted. Estes v. U.S., 883 F.2d 645, 648 (8th Cir. 1989)(holding that even assuming counsel failed to adequately explain the nature of a plea agreement, no prejudice can be shown where the transcript of the plea proceedings revealed the trial court verified defendant's understanding of the matter and, with that understanding, the defendant pleaded guilty).

2. <u>Failure to Move to Suppress the Defendant's Statements.</u>

The defendant claims Mr. Vanderslice's representation was constituionally deficient because he "failed to review defendant's confession for violation of rights." Filing 55, p. 6, Ground Two. The defendant explains:

> Defendant's confession was taken by a rep from both state and federal agents. Defendant was advised of his rights. At this point defendant requested counsel - See confession line 193 - and was denied such.

Filing 55, p. 6, Ground Two.

The defendant acknowledged at his sentencing hearing that before he decided to enter a plea of guilty, he and his attorney discussed the facts and legal merit of filing a motion to suppress his confession. Upon review of the circumstances, Mr. Vanderslice concluded it was unlikely the defendant's confession would be suppressed, and he advised the defendant as such. After weighing the risks and benefits of foregoing further litigation and entering into a plea agreement with the government, the defendant decided to enter a guilty plea.

A defendant's knowing and intelligent guilty plea "operates as a waiver of all non-jurisdictional defects or errors," (<u>U.S. v. Staples</u>, 435 F.3d 860, 864 (8th Cir. 2006), and "forecloses 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" <u>U.S. v. Vaughan</u>, 13 F.3d 1186, 1187 (8th Cir. 1994)(quoting <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973)). See also <u>U.S. v. Smith</u>, 422 F.3d 715, 724 (8th Cir. 2005)("By entering a plea of guilty. . ., [the defendant] effectively waived his right to appeal the denial of his suppression motion."). "A valid guilty plea forecloses an attack on a conviction unless 'on the face of the record the court had no power to enter the conviction or impose the sentence.'" <u>Walker v. U.S.</u>, 115 F.3d 603 (8th Cir. 1997)(denying defendant's § 2255 motion attacking the validity of his guilty plea;

the defendant could not show prejudice where a factual basis for the plea existed and was presented at the plea hearing). A defendant who "seeks to have his sentence vacated on the ground that he would not have pleaded guilty had he been aware that [his] confession was not admissible in evidence" cannot successfully claim his guilty plea was involuntary if he was "informed of the charge against him, of the possible penalties, and of his rights at the time of entering his plea." Cantrell v. U.S., 413 F.2d 629, 632 (8th Cir. 1969).

Likewise, a defendant who confesses his guilt in a plea hearing cannot obtain § 2255 relief by merely claiming his out-of-court confession was obtained in violation of his constitutional rights, and that a motion to suppress could have been filed and won had he received effective and adequate trial representation. Cantrell, 413 F.2d at 632.

> After self-conviction by a guilty plea, no judge can evaluate what the outcome would have been had the plea been otherwise, had a trial taken place, and had an evidentiary issue been raised and decided. A motion to suppress might or might not have been well founded. The evidence in question might or might not have been the difference between conviction and acquittal. It takes far more, we feel, than a mere assertion that a [suppression] issue is present which might have been raised, and which, if raised, might have been decided in the petitioner's favor, and which, if so decided, might have resulted in an acquittal. These are the very kinds of considerations which enter into the decision, by the defendant and counsel, whether to plead guilty or not guilty. Once the plea is entered, its natural consequences ensue. One does not deserve both the choice of plea and the advantage of hindsight.

Cantrell, 413 F.2d at 633 (denying defendant's § 2255 motion claiming he was denied effective assistance of counsel because neither the court nor his attorney informed him that by entering a plea of guilty, he waiving any right to request suppression of his confession and incriminating evidence obtained during a search).

15

The defendant confirmed at the sentencing hearing that he and Mr. Vanderslice discussed whether to file a motion to suppress his confession. After considering the evidence in the context of the law, Mr. Vanderslice told the defendant that it was unlikely such a motion would be successful. The record reflects that defendant's counsel attempted to negotiate a favorable sentence for the defendant, and that the government considered the defendant's early acceptance of responsibility as a significant factor in offering the defendant a plea agreement. The defendant was apprehended with a gun at the scene of one bank robbery–a "cut and dried" case. He has presented no valid claim that his counsel provided improper or incorrect advice regarding a motion to suppress defendant's confession related to the twelve other bank robberies.

The defendant has also failed to claim or show he was prejudiced by following his counsel's advice, foregoing the filing of a motion to suppress, and instead entering into a plea agreement that afforded the defendant an opportunity to avoid spending the rest of his life in prison. Merely criticizing an attorney's tactic or strategy is not in itself sufficient to support a charge of inadequate representation. Cantrell, 413 F.2d at 632.

Since the defendant has failed to allege or show that his counsel's advice or strategy fell beyond the "wide range of reasonable professional assistance," (Strickland, 466 U.S. at 687-88), or any reasonable probability that but for his counsel's failure to move to motion to suppress his confession, the result of the proceeding would have been different, (id. at 694), the defendant is not entitled to § 2255 relief on this basis.

    3.    <u>Failure to File an Appeal at Defendant's Request</u>.

The defendant claims:

16

> At the time of sentencing defendant requested Appointed Counsel John C. Vanderslice, to file an appeal regarding sentencing. Counsel informed defendant that he did not see any grounds to file appeal, defendant stated that he would like the case to be examined for further appeal process, counsel did not respond to defendant's request and therefore, failed to notify this court and this defendant of his intentions. This defendant was not afforded the right to appeal or to Cert the Supreme Court.

Filing 55, p. 5, Ground One.

"[C]ounsel's failure to file a notice of appeal when so instructed by the client constitutes ineffective assistance of counsel for purposes of section 2255." Estes, 883 F.2d at 648. A defendant seeking § 2255 relief "need not show that he was prejudiced by his attorney's failure to file a timely notice of appeal." Holloway v. U.S., 960 F.2d 1348, 1357 (8th Cir. 1992). However, the defendant must prove he "made his desire to appeal evident to his attorney. . . . 'A bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition.'" Yodprasit v. U.S., 294 F.3d 966, 969 (8th Cir. 2002)(quoting Barger v. U.S., 204 F.3d 1180, 1182 (8th Cir. 2000)).

Because resolution of this issue will require a credibility determination, an evidentiary hearing is appropriate. See United States v. Taylor, 258 F.3d 815, 818 (8th Cir. 2001). The defendant is entitled to counsel representation at this hearing. I shall therefore refer this matter to Magistrate Judge Piester to appoint counsel for the defendant, conduct the hearing, and issue proposed findings and recommendations. See Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

If after reviewing Judge Piester's proposed findings and recommendations I determine that counsel in fact breached a duty to file an appeal, I will consider

17

resentencing the defendant in order to restore his right to appeal. See <u>Barger</u>, 204 F.3d at 1182. If, however, I determine that defendant's claim of ineffective assistance is without merit, I will then enter a final judgment denying his § 2255 motions in their entirety.

    IT IS ORDERED that:

1.     Defendant's § 2255 motion and amended motion (filings 52 and 55) are denied except insofar as Defendant claims that counsel failed to file an appeal as instructed.

2.     This matter is referred to Magistrate Judge Piester to appoint counsel for the defendant and conduct an evidentiary hearing on Defendant's claim of ineffective assistance of counsel regarding the failure to appeal.

April 3, 2007.                      BY THE COURT

                                          s/ Richard G. Kopf
                                          United States District Judge